UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
JUN 20 2005

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 05-40038 |
| Plaintiff, | |
| vs. | REPORT and RECOMMENDATION (Motion to Suppress) |
| CARLOS AGUILERA, | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant's Motion to Suppress Evidence (Doc.16). A hearing was held on Monday, June 6, 2005. Defendant was personally present and represented by his counsel of record, Mr. Shawn Nichols. The Government was represented by Assistant United States Attorney Mr. John Haak. Sioux City, Iowa Police Officer Troy Hansen and Woodbury County Iowa Deputy Sheriff Tony Wingert testified at the hearing.[1] Six exhibits were received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **GRANTED** in part and **DENIED** in part.

## JURISDICTION

Defendant is charged in an Indictment with conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated February 1, 2002.

---

[1] A transcript of the hearing has been filed with the Clerk as Doc. 24.

## FACTUAL BACKGROUND

Sioux City Police Officer Troy Hansen and Woodbury County, Iowa Deputy Sheriff Tony Wingert were both part of the Tri-State Drug Task Force in September, 2004. TR 6, 31. As part of those duties, they were assigned to investigate the Defendant, Carlos Aguilera. TR 7-8, 31. Officer Hansen explained that on September 28, he was involved in a surveillance operation which resulted in Mr. Aguilera's arrest for distribution of methamphetamine. TR 8. Mr. Aguilera was transported to the Sioux City Police Department for an interview. TR 9. Deputy Wingert was also present for the interview, which was recorded received into evidence as EX 2.

Officer Hansen read Mr. Aguilera his *Miranda* rights in English from a plastic card at approximately 8:57 p.m. EX 2, TR 10-11. Officer Hansen is heard on the DVD asking Mr. Aguilera if he understood, and Mr. Aguilera responded affirmatively. EX 2 at 20:57, EX 6, TR 11. Officer Hansen gave Mr. Aguilera the plastic card, which contained the *Miranda* warning written in Spanish on the other side, and allowed Mr. Aguilera to read it to himself. TR 11-12, EX 2 at 20:28. Mr. Aguilera can be seen and heard on the DVD mouthing the words to himself in Spanish, and at 20:59 he said "I don't have school, so I read it slow." At 21:00 Mr. Aguilera said "You say I can get a lawyer or something like that?" Officer Hansen replied, "Yeah, it's just like I read them to you. You have the right to remain silent. However, if you choose to talk, you can have a lawyer present with you. You can stop the questioning." Mr. Aguilera said, "I don't got no lawyer so . ." followed shortly by "I don't got no money either."

At 21:01, Mr. Aguilera asked Officer Hansen to go over the *Miranda* warnings with him again in English, and Officer Hansen complied, pausing between each right to ask if Mr. Aguilera understood. Mr. Aguilera responded affirmatively each time. EX 2 at 21:01. This conversation regarding Mr. Aguilera's right to counsel was more enlightening:

| | | |
|---|---|---|
| 21:01:34 | Hansen: | Do you understand? |
| 21:01:36 | Aguilera: | Umm, so-so. You ask them in English again. |
| 21:01:38 | Hansen: | In English again? OK. You have the right to remain silent. Do you understand that? |
| 21:01:43 | Aguilera: | What is silent? |

| 21:01:46 | Wingert: | Not talk. OK? |
| | Hansen: | Not talk if you don't want to. |
| | Wingert: | Silencio |
| | Hansen: | OK? |

| 21:01:48 | Hansen: | Anything you say can be used against you in court. Do you understand that? |

| 21:01:50 | Aguilera: | Yeah, uh, OK. |

| 21:01:52 | Hansen: | You have the right to talk to a lawyer for advice before we ask you any questions and have a lawyer with you during questioning. Do you understand that? |

| 21:02:00 | Aguilera: | Uh huh. |

| 21:02:01 | Hansen: | If you cannot afford a lawyer, one will be appointed for you before any questions if you wish. Do you understand? |

| 21:02:08 | Aguilera: | Uh huh. I don't know, I don't know what can, what can a lawyer do? Like in the courthouse? You don't have a lawyer right here? |

| 21:02:18: | Hansen: | We don't have lawyers right here, no. |

| 21:02:22 | Aguilera: | I don't have a lawyer, so I don't really know. |

| 21:02:28 | Hansen: | But if you want a lawyer before you talk to us that's fine. Basically Carlos, what we're going to do is ask you some questions about dealing drugs. |

| 21:02:39 | Aguilera: | You say I sell drugs. I don't sell drugs to nobody. |

Thereafter, the conversation continued, and Mr. Aguilera persisted in his denial about selling drugs to the person who was at his house during the surveillance operation which resulted in his arrest. EX 2. Throughout EX 2, it was very apparent that Mr. Aguilera–although he had a thick Hispanic accent, spoke and understood the English language. He conversed with the officers–and they with him-- without much difficulty at all. It is obvious from watching the DVD that while his skills were not perfect, Mr. Aguilera was very conversant in English.[2]

At 21:19:08, Mr. Aguilera said, "I need to, I guess, speak to a lawyer or something. I don't

---

[2]Officer Hansen agreed there were times when the two of them had difficulty understanding each other, but estimated he understood Mr. Aguilera 98% of the time. TR 22.

know exactly why the...." At that point he was interrupted by Officer Hansen's phone ringing. Then Mr. Aguilera continued to speak, stating, "So this, this guy's wife says she knows me too?" And the conversation resumed. EX 2, 21:19:34.

The interview (and Mr. Aguilera's denials) continued. Mr. Aguilera next mentioned a lawyer at EX 2, 21:40:48 when he said, "I want to speak to a lawyer. I want to know what's going on." Officer Hansen responded by telling him he did not blame him because he was in a heap of trouble. Id. at 21:40:52. A brief conversation occurred between Mr. Aguilera and the officers before Mr. Aguilera was handcuffed and led out of the interview room at 21:44. Officer Wingert characterized the September 28th interview as concluding without obtaining a lot of positive information from Mr. Aguilera. TR 32.

The next day (September 29, 2004) Mr. Aguilera had an initial appearance in Iowa District Court (Woodbury County). At his initial appearance, the Honorable Patrick McCormick, District Associate Judge, informed Mr. Aguilera of his right to retain counsel, his right to request appointed counsel if he was unable to afford counsel, his right to remain silent, and that any statement he made could be used against him. The entire proceeding was translated into Spanish for Mr. Aguilera's benefit. See Stipulated Facts, EX 4. Judge McCormick appointed an attorney to represent Mr. Aguilera and the conditions of his bond were set at the initial appearance on September 29th. Id. Mr. Aguilera satisfied the conditions of the bond and he was released on September 30th.

On September 30th Mr. Aguilera walked into the Drug Task Force Office -- off the street-- after he bonded out of jail and appeared at the front desk, asking for officers Hansen and Wingert. TR 28, 32-33. Officer Wingert was the first officer to have contact with Mr. Aguilera on the 30th. TR 20-21. Officer Wingert asked Mr. Aguilera what was going on, and Mr. Aguilera said he wanted to talk. TR 32. Officer Wingert explained they couldn't speak to each other because he (Aguilera) was represented by counsel and needed to talk to counsel first. Id. Mr. Aguilera persisted, however, because he was upset his former confederates had not bonded him out of jail, and he wanted to help the task force officers catch them. Id. Officer Wingert read Mr. Aguilera his *Miranda* rights, and went to get Officer Hansen and a recording device. TR 32-33. In stark contrast from the first interview, once the September 30th discussion started Mr. Aguilera gave the officers helpful information "faster than they could write it down." TR 34. Mr. Aguilera walked out and went home at the end of the interview on September 30th. TR 35.

## DISCUSSION

The issues presented are whether Mr. Aguilera understood his Fifth Amendment right to remain silent, and whether he knowingly and voluntarily waived his rights when he spoke to officers Hansen and Wingert without counsel present on September 28th. It must also be determined whether any of Mr. Aguilera's references to a lawyer during the September 28th interview rose to the level of an unambiguous request for counsel, which should have required the officers to immediately cease questioning. The final issue presented in this case is whether, after counsel was appointed at his initial appearance, Mr. Aguilera waived his Sixth Amendment right to counsel when he initiated contact with Officers Wingert and Hansen at the Task Force office on September 30th and again spoke to them outside the presence of a lawyer.

"The Government bears the burden of proving by a preponderance of the evidence that the defendant's waiver of rights was voluntary." United States v. Castorena-Jaime, 117 F.Supp.2d 1161, 1170 (D. Kansas 2000) aff'd 285 F.3d 916 (10th Cir. 2002). "[T]he appropriate standard for reviewing the validity of a waiver of the sixth amendment right to have counsel present at an interrogation is essentially the same standard applied to waivers of the fifth amendment right to counsel where the right to counsel has been previously invoked. That is, the government has the heavy burden of proving that under the particular facts and circumstances of the case, the waiver was an intentional, voluntary, knowing and intelligent relinquishment or abandonment of a known right or privilege." United States v. Eagle Elk 711 F.2d 80, 82 (8th Cir. 1983) cert. den. 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1983) (citations omitted, punctuation altered).

1. **Whether Mr. Aguilera's English Skills Were Sufficient For A Knowing, Voluntary Waiver**

In considering whether a defendant has knowingly and intelligently waived his Miranda rights, the Court considers, as one factor, any language difficulties encountered by the defendant during the custodial interrogation. United States v. Garibay, 143 F.3d 534, 537 (9th Cir. 1998).

> Language barriers are a factor to consider, because they may impair a suspect's ability to act knowingly and intelligently. Language is not a stumbling block when the suspect is advised of his rights also in a language that he ostensibly understands. It becomes a more difficult problem when the *Miranda* rights are given in English only. In these instances, the courts consider what effort the officer made to communicate, whether the defendant responded that he understood his rights or ever indicated that he did not understand them, and what the defendant displayed in English language skills.

United States v. Catorena-Jaime, 117 F.Supp.2d 1161, 1171 (D. Kansas 2000) aff'd 285 F.3d 916

-5-

(10th Cir. 2002) (citations omitted). However, "a defendant's ignorance of the full consequences of his decisions [does not] vitiate their voluntariness." Oregon v. Elstad, 470 U.S. 298, 316, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985). "The defendant need not appreciate the tactical advantage of remaining silent for the waiver to be intelligent. The Supreme Court has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." United States v. Catorena-Jaime, 117 F.Supp.2d 1161, 1171 (D. Kansas 2000) aff'd 285 F.3d 916 (10th Cir. 2002) (citations omitted).

The Court is unpersuaded that Mr. Aguilera's English skills were so lacking that he did not understand his Miranda rights. The DVDs admitted into evidence reveal that, while obviously not a native English speaker, Mr. Aguilera's English skills permitted him to communicate effectively in English. Officers Hansen and Wingert testified they could understand Mr. Aguilera and believed he understood them during their conversations in English. Mr. Aguilera acknowledged his understanding several times throughout the interview, regarding not only the *Miranda* rights but several other topics. While counsel insinuated Mr. Aguilera might not have been able to read the Spanish *Miranda* card, he can be seen and heard on the DVD mouthing the words to himself in Spanish. That Mr. Aguilera understood and appropriately answered the questions put to him in English compels the conclusion his English skills were sufficient for a valid Miranda waiver. United States v. Carrate, 122 F.3d 666, 670 (8th Cir. 1997). See also United States v. Perez, 200 F.3d 576 (8th Cir. 2000) (consent to search voluntary although English not defendant's first language); Campaneria v. Reid, 891 F.2d 1014 (2nd Cir. 1989) cert. den. 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991) (waiver of Miranda knowing and intelligent even though defendant spoke "broken" English and lapsed into Spanish during conversation with officers).

### 2. Whether Mr. Aguilera Unambiguously Requested Counsel During the September 28th Interview

If an accused expresses his desire to deal with law enforcement only through counsel, he cannot be subjected to further interrogation until a lawyer has been made available unless the suspect himself initiates further communication with law enforcement. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). "Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of any attorney." Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994)(citation omitted). In Davis the United States Supreme Court held that the defendant's remark, "maybe I should talk to a lawyer" was not a request for counsel.

-6-

The Court noted, "we are unwilling to create a . . . layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue. Id., 512 U.S. at 462, 114 S.Ct. at 2537.

> A suspect must unambiguously request counsel and if he does not articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney . . . Edwards does not require that the officers stop questioning the suspect.
>
> \*\*\*
>
> Supreme Court precedent does not require the cessation of questioning if a suspect makes a reference to any attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel.

Dormire v. Wilkinson, 249 F.3d 801, 804-05 (8th Cir. 2001) cert. den. 534 U.S. 962, 122 S.Ct. 370, 151 L.Ed.2d 281 (2001) (citations omitted). Also, if the reference to an attorney is ambiguous, it is *good* but not *required* practice for the police to ask questions to clarify whether the suspect does want an attorney present. Id. at fn. 2. In Dormire, the defendant asked, "could I call my lawyer?" The Eighth Circuit held the state court did not unreasonably apply federal law in finding that, under circumstances similar to this case, that question was not an unambiguous request for counsel.

In this case, Mr. Aguilera said "I need to, I guess, speak to a lawyer or something" at 21:19. Then, at 21:40:48 he said, "I want to speak to a lawyer. I want to know what is going on." The statement at 21:19 is equivocal and is substantially similar to the statements in Davis and Dormire because it does not constitute a clearly unambiguous request for counsel. The statement at 21:40:48, however, is more definite and a reasonable officer should have understood it to be a request for an attorney. Questioning should have immediately ceased at that time. It is respectfully recommended, therefore, that Defendant's Motion to Suppress as to statements made before 21:40:48 on September 28th be DENIED, and as to statements made after 21:40:48 on September 28th be GRANTED.

### 3. Whether Mr. Aguilera Effectively Waived His Sixth Amendment Rights on September 30th.

"The right to counsel under the Fifth Amendment may be waived even after it has been invoked if the accused himself initiates further communication with the police . . . the same waiver rule applies under the Sixth Amendment." Shafer v. Bowersox, 329 F.3d 637, 654 (8th Cir. 2003), citing Patterson v. Illinois, 487 U.S. 285, 291, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988);

Michigan v. Jackson, 475 U.S. 625, 635, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986). "Initiation by a defendant occurs when the defendant evinces a willingness and desire for a generalized discussion about the investigation." Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000) cert. den. 531 U.S. 1021, 121 S.Ct. 587, 148 L.Ed.2d 502 (2000). The same warning which suffices for *Miranda* purposes is also sufficient to advise a defendant of his rights for post-indictment questioning. Patterson, 487 U.S. at 298, 108 S.Ct. at 2398; Schafer v. Bowersox, 329 F.3d 637, 654 (valid Sixth Amendment waiver when defendant was advised of his *Miranda* rights before participating in self-initiated post-indictment interview against his attorney's advice).

Mr. Aguilera initiated contact with Officers Wingert and Hansen on September 30th. The officers again advised Mr. Aguilera of this *Miranda* rights[3] before the interview began, and Mr. Aguilera persisted in his desire to talk with them because he was angry with his former confederates for failing to bond him out of jail. Mr. Aguilera validly waived his right to counsel on September 30th, and it is respectfully recommended to the District Court that as to the statements he made on that date, Defendant's Motion to Suppress should be DENIED.

## CONCLUSION

Mr. Aguilera's English skills, while not perfect, were sufficient for him to knowingly and voluntarily waive his *Miranda* rights. He unambiguously requested an attorney at 21:40:48 during the September 28th interview, at which time questioning should have immediately ceased. All statements made until 21:40:48 during the September 28th interview should be admissible, and all statements after 21:40:48 during the September 28th interview should be suppressed.

Mr. Aguilera made a knowing, voluntary waiver of his Sixth Amendment rights when he initiated contact with Officers Wingert and Hansen on September 30th, so the statements he made on that day need not be suppressed. Therefore, it is respectfully recommended to the District Court that Mr. Aguilera's Motion to Suppress (Doc. 16) be **GRANTED** in part and **DENIED** in part as follows: All statements made during the September 28th interview after 21:40:48 should be

---

[3] The *Miranda* advisement was given before the audio recording began on September 30th, but the officers testified the warning was given to Mr. Aguilera that day and they were credible witnesses. Also, Mr. Aguilera did not assert at the hearing that the officers did not reiterate the *Miranda* warnings on the 30th, and the parties stipulated that Judge McCormick also reviewed Mr. Aguilera's constitutional rights with him in Spanish during his initial appearance on September 29th. Mr. Aguilera, therefore, had been advised at least five times–in English and Spanish–orally and in writing-- of his right to counsel during questioning when he chose to speak to Officers Wingert and Hansen without his lawyer on September 30th.

suppressed, but the September 28th interview is otherwise admissible. The September 30th interview should be admissible in its entirety.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)

Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 30th day of June, 2005.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By *Shelly Margulies*, Deputy
(SEAL)

-9-